Good afternoon, Justices. My name is Dennis Elber. I represent Pack. If you go back and take a look at the bankruptcy court and see the proposed findings of fact that were submitted and the extensive reference and argument on those facts that were submitted to the bankruptcy court and then wait a year and approximately one year later the bankruptcy court rubber stamps what the objectors did. It then makes its way to the district court that does not do a searching review. Incorrectly looks at certain things and we are here. Nowhere in anything this court has read can the court see what the facts actually are because they've never been referred to. In other words, when the courts, when the Justices go and take a look at our proposed findings of fact which are rich in evidentiary detail and rich in references and to the argument which basically sums it all up, you will see not one fact, not one fact has been dealt with by either the beast or the beast. I've looked at her findings of fact and you're right. She adopted the findings proposed by the other side. I mean, it's not uncommon. We frown on that. It's not prohibited. It is not prohibited. Absolutely. But it then goes to a searching review. Not done by the district court. And when that searching review is done, there is only one result. As a matter of law, the matter of law, ArtPak suffered lost profits damages. Wait a minute. That we only get to if we first reverse her on or first the district judge with regard to the substantial factor issue, right? No, I believe that when the court searches the entire record and does what the court must do, which is take a look at all the cited, that only one reasonable conclusion can result. As to what? As to the fact, oh, I see. Yes, as to the fact that as a result of the malicious prosecution, ArtPak suffered lost profit damages. Some lost profit damages. But that would turn on the question of whether or not the sale of the business was precipitated by the malicious prosecution case at all. At all, yes. In other words, the only way it doesn't happen is if the malicious prosecution case was remote or trivial under California causation. Which is what I understood the district court to find. You don't think so? No. You don't think that's what you found? You don't think that's what the bankruptcy court found? Couldn't have. Never talked about the law. In other words, no. Well, he did use the term substantial factor. But remember that the objectors who prepared the finding, fact and law, basically used substantial factor. And when you take a look at their brief, in the bankruptcy court, they equate proximate cause with substantial factor. Okay, but she didn't. Who was the district judge, the bankruptcy judge? Judge Kaufman. Right. Who was a woman? Yes. Okay. And just so I get my words right. Right. You want to be gender correct. All right. So do you have any doubt that if we sent this back to Judge Kaufman and said, did the malicious prosecution have anything or anything non-trivial to do with the sale, that she would find that it did not? That seems to me to be what she found. She didn't think it had anything to do with it. She didn't find it. In other words, what I thought. Well, she came pretty close to finding it. No, what I'm saying is she stamped. Well, we understand that. Okay. We understand that. Okay. But nonetheless, she. The point is that I don't think you can send it back to her. And the reason is, this is an Article 3. Well. There's a waiver argument here. There's a waiver argument that does what? In other words, here's what the issue. Assuming that it's a court claim or a non-court claim, you can waive your right to an Article 3 judge. You can absolutely waive it. But it is restricted because, as all of the appellate courts say, including this court in Bellingham and the related cases, that it has to be knowing and voluntary. And when you look at roll, you see that it's. Well, my understanding is this. If the question is whether you waived the right to have a trial in the district court, trial conducted by the district court, it seems to me you clearly did. The only argument you have, which isn't a bad one, is that what you didn't waive was the right to treat the. Her findings as a report of recommendation and have the district court review it de novo. Absolutely. All right. So to go back to where we started from, it would still go back to Judge Kaufman for initial findings, which then the district judge could review. So I still stand where I was. But I do think that the it's a question you don't quite discreetly discuss, nor does your opponent, as to exactly what it is you were supposedly waived. And it has something to do with the fact that when you move to withdraw the reference, it was before the findings and the findings and conclusions, whether they're considered R&Rs or not, were issued. And you would seem to be at that point asking for an actual withdrawal of the whole case and for the district court to either start over again or at least make findings itself. Because from day one, they object to the claim. They issue, in our response, things that are just inaccurate, both legally and factually, that have now pervaded the entire case. We talk about loss-profit law. Because one of the things that was fascinating about the district court is how does Florida law, which I think was in their conclusions of law 17, 18, and 19, apply to this case? Not only that, not only that, they had repair of business law. It is all over the ballpark. In the conclusions of law, they never define substantial factor, ever. There is, when the court, when it is all looked at intensely and thoroughly, as it must be, nobody did. My understanding was that the district judge found, I understand that it was a rubber stamp, but what she found was that Mr. Meharry, what, how do you say his name? Meharry. Meharry was not, in fact, made ill by this because he wasn't actually made ill by this because he'd been ill before, he was stressed before, he was stressed after. That he had no doctor testify who actually had ever examined him, and she didn't believe him. She just didn't believe him. Well, I'm sorry, I apologize. And also, that his business had done very well all this, for this last year when he was supposedly in such terrible shape. And that in the whole transaction, there was no discussion of any problem with the malicious prosecution case having generated the transaction, and essentially, she just didn't think it had anything to do with it. As we thoroughly demonstrate in our briefs, and again, I'd send, from the beginning, we talk about all of this. But, the facts relied on, that were rubber stamped, out of all the facts in this case, are about this much. And let me, and here's what's interesting. The district court says the plaintiff's theory at trial was that stress caused him to sell. It was absolutely not our theory at trial. It was not the theory in the claim. It was not the theory. Then what was the theory? The theory was this. And this is what's fascinating about this case. It's a bankruptcy case. Where George Marciano took all of his power, and all of his money, and one by one decided to go after people. But the problem here, as I understand it, was that, in this instance, he sued a corporation. Yes. Okay. And while the other individuals who were sued counterclaimed in the original suit for malicious prosecution, that didn't happen. ARTPAC didn't. They didn't counterclaim for malicious prosecution, because in California, you cannot, until it's concluded. What the individuals counterclaimed for was emotional distress damages. And remember, they were awarded five, and when the court goes back and reads the Fodds and Iskowitz opinions, as we've thoroughly shown, they were awarded in a default. Right. So, it certainly appears that what the ARTPAC owners were arguing was, we also had terrible emotional distress, and that's why we sold the business. No. No? Here's what it was. In 2007, Marciano decides to go after everybody, one by one. 2007, he starts sending letters to Alamo, Nigeria, and Oman. We want this. We want this. Talk to our lawyers. Talk to this. And you can see in the medical records, at that time, none of it's ever been discussed, that his health starts to worsen. This is a healthy person. Then, in 2007, Marciano notices Ali's deposition, as the owner, Ali Anilano. He basically goes to them, all this is unopposed, he basically goes to them and says, lie for me about Christie's, or I will sue you. They say, no. What you're asking us to do is absolutely wrong. Two months later, they sue him. He sues them. In the record is substantial evidence of what Ali was like before and after. It wasn't just that Marciano destroyed his health, he destroyed his will. What seems never to be here is that a very rich person came in to the legal system and basically said to hardworking people with a lifelong business that they loved, said the following, hey, you're dead. I'm going to chase everybody beyond my grave. It's all in there. I'm chasing everyone. Why doesn't all of this lead to the conclusion that he made Ali very upset and that's why he sold the business? What else is the connection to the business? The connection, well, when you say upset, a malicious prosecution, by definition, is something of ill will. When you go into the law, basically, he and, what is it, Citywide, a malicious instrument to use small business and injure, and its owner. And so he goes in and he's overwhelmed. How does he fight Marciano? It manifests itself physically, which is one of the issues. I mean, how, I mean, the issue about Dr. Melman's testimony and Semitelli and Messick, this case is rife with error. And at some point, we need the kind of searching review that at least acknowledges the evidence. Okay. May I just save some time for a bow? Yes.  You can have a minute. Thank you. Let's hear from the other side. Good afternoon, Your Honors. May it please the Court, James Hunter for David Gottlieb. Opposing counsel said... You're the trustee. You're... Yeah, the trustee. Gottlieb is the trustee. Yes, he is. Oh, he's the former trustee. Former trustee. He's now the administrator of the plan. Okay. Opposing counsel said that this case is rife with error. What it actually is rife with is independent basis to support the Court's ruling with respect to the causation. In order for them to recover any actual damages of lost profits, they need to prove, one, causation, and two, that there were damages. With respect to the causation issue, the Court did find, and clearly in paragraphs 56 through 58 of its findings, and it were its findings, even if it adopted in the main, but not entirely, what was proposed by one of the counsels. They also proposed their findings. Well, pretty entirely. What? Pretty entirely. Pretty entirely, yes. And there was one sentence, of course, to have. Right, because they were carefully and appropriately prepared and reflected the evidence. And all of them are, in fact, cited to evidence that was in the record that supported the findings of fact that the Court did make. And the Court found, one, that it was not a substantial factor of his decision to sell, that he was sued two months before he decided to sell. In fact, she didn't simply find that that was not a factor. She found what were the factors, that he had health problems that preexisted it, that he wanted to retire. She also cited to the fact that he had represented to various people, including his broker and including the persons to whom he was selling the business, that he was selling it because he wanted to retire and because of health reasons. And he never told any of them it was because he was being pressured by an underlying action. So that, in and of itself, suggests that there was more than enough evidence. Well, he obviously wouldn't have went to the seller of that, because the action was still ongoing, wasn't it? Well, you know what? If he was stopping, if he was trying to hide that, then that's something that a court could find, if it was not honest to the buyer, that that was further evidence that he was not being honest to other people as well or to the court. People who sell things to other people don't have to tell them everything. You know, credibility is for the trier of fact in the first instance. And she clearly did not find them credible. And she explained why she didn't find them credible. One oddity about that is that she, he didn't actually testify before her, did he? No, but what she did do was, they submitted declarations that omitted various facts that she found were critical. That was the reason that she didn't find them credible. She also found that their claims were exaggerated. And from their declarations themselves, if you review them, their claims for $40 million in lost profits based on a company that earned $2 million in total income in its prior year, they were grossly exaggerated. So I believe... Were they subjected to cross-examination? I'm sorry, what? Were they subjected to cross-examination? They were not. On their declarations?  That's kind of a weird way to conduct a trial. Well, we, their expert on lost profits was subjected to cross-examination. No, but weren't their declarations by, what are their names? The Mojeres. Yes, it's actually standard in bankruptcy court for people to submit declarations and the opposing counsel... How did you ever get to cross-examine them? I did not believe that there was anything I needed to get out on cross-examination. And also, as a tactical matter... But he claims that he had explanations for some of the things he was faulted on. And so assumptions were made that he couldn't have stood up to cross-examination when maybe he could have. Then a tactical decision was made not to cross-examine them, to give them a chance to go beyond what the testimony was. You're limited at a bankruptcy court trial to the evidence you choose to put into your initial declarations. And the other side, if they don't want to cross-examine them... They don't have to, and they don't give them a chance to redirect, to supplement the record, which I believe would have happened beyond what was actually in their initial declarations. But for example, here there was a whole flap about Christie's and whether Christie's closing actually had anything to do with the prospects for his business. And he said, you know, if anybody had asked me, I would have explained it, but nobody asked me. But instead, an assumption was made that, in fact, because Christie's closed something down in L.A., that would have affected his business. The evidence that did come in confidently was that they were closing it down. Yes, but there was no evidence about how it would have affected his business. If they wanted to put that evidence in, they should have put it into their case in chief. It wasn't in his declaration. Yes, in their declaration. They were entitled to put in whatever evidence they wanted to support their case. But this just goes to one evidence on causation. Another separate independent grounds why you can't even get to causation is because they did not put in a competent medical expert that was excluded, that was required under California law. You cannot prove that you sold your company because of stress, which was their claim, without a medical expert under California law. They didn't challenge that that was the law on the appeal to the district court. And they didn't challenge the exclusion of their expert to the district court. So that would have been waived, and it was an independent basis. But then you get to lost profits. And lost profits, again, there was substantial evidence why the bankruptcy court rejected their expert and cited their, like, 12 different factors in the findings of fact. But there's, again, another separate independent reason why lost profits couldn't have been awarded. It was undisputed, not contested with the district court, that under California law, in order to collect lost profits of an owner business, where the owner works for the business, you have to deduct the value of the owner's services. They had no evidences to that. They never put it in. I mean, but as a general matter, damages have to be proven, you know, in a very ballpark fashion, right, in general. And you're looking at the inquisition. Well, lost profits, you say, in general. But there's a clear rule, though. You can be ballpark, but you have to put in some evidence if it's an owner, if the business is owned by the owner that's suing it, if the corporation. But the problem here is that if the other piece works, the causation thing, and I understand that the holding was a dozen, then the notion that there would have been some lost profit, something, more than zero, seems suitably to be proven. I mean, all the quibbling, or even if it isn't quibbling, all the findings about she wouldn't have worked for us very long, and he would have retired sooner, and, you know, their numbers were way too high. I understand all of that. But that doesn't lead to zero. Yes, but it's not quibbling. It's their obligation to put some evidence before a court for where it can actually fix a number that it has some confidence in. And when the evidence they all put in presumed that Alana Moajiri was going to be working until she was 62, when she was permanently disabled. And then the district court can find, no, she won't. So I'm assuming that's not going to happen. But he will work for at least a while. And with regard to the value of their services, I mean, that also seems to be kind of the result of this strange procedure. Because he, I presume, if asked, would have said something about what he was worth. He was asked, and he said, I can't value it. As far as he was concerned, he was a genius in the, and this was their premise, that he was a genius in the boxing industry, and you really couldn't put a value on his services. And that's why what they took as salary had nothing to do with what he believed the real value of his services was. So really, actually, the value of this business, according to Mr. Moajiri, was the value of his services. And if they had been deducted from the business, I don't know that there would have been any profits. The business was him. And under California law, you have to deduct the value of the services. So somebody thought that there was a value of it. I mean, that's not a bad measure of what it's worth. The fact is that somebody paid for goodwill value. And they got that. In other words, yes, to the extent that there was value other than his services, they received it when they sold the business. So there just was no basis for the court to estimate, make up on its own, and it couldn't simply look at the tax returns for 20 years and extrapolate them out for 2 years, 5 years, figure out a number on its own, and say, well, I'm just going to award $200,000 as damages for lost profits. It's the obligation of the plaintiff to put forth some kind of coherent case and make a coherent case as to an amount. And they didn't do that. So on your theory, just to go to the other issue in the case, which is the waiver of Article 3 and so on, does it really make any difference? Did the district judge say what he was doing here, what she was doing? I think he clearly reviewed the facts closely anyway, if you look at it. And he was looking for clear error. And if they'd been findings of fact made by the trial court, because it wasn't empowered, though I believe it was waived, there would have been the same level of review. There would have been no different review by this district court. It did review it carefully. If you look at the district court opinion, it cites to the specific facts. And in particular, he had to review the facts, her factual findings for clear error. Right. Right? Yes. Okay. Yeah, and almost all of this was, in fact, done by declarations and a trial transcript. But if he had been doing it as a report and recommendation, he would have reviewed de novo. Right. There is a difference. There may be a difference. There is a difference. Okay. But I believe... On de novo, you can take additional evidence. They didn't argue to him that, in fact, there was no jurisdiction to the district court. They'd never made this argument to him. Well, they did ask him to withdraw the reference. Earlier, but not in this appeal. On this appeal, in the decision of this appeal, they did not argue that at all. What they didn't argue... I was going to ask you that, and I will ask him that. What they didn't argue, you're saying, is that the district judge should review de novo. Is that what they didn't argue? I think they argued that was the standard. But they didn't argue that was because they had erred in not withdrawing it or not trying it because it was under 503. They did not make the argument that it should have been tried by the district court initially. That they did not argue. But that doesn't make any difference. Did they argue on the appeal that what they hadn't waived was the treatment of the bankruptcy court's decision as an R&R, and therefore the district judge should review de novo? Did they argue that? Only in... They didn't really argue that legally, and they didn't make a legal argument. If you look through their briefs below, they did not make that argument. They did argue that the standard review that should be applied, without explaining that that was a basis for why they were doing it, for de novo. Because my understanding of what they're arguing now is not that the trial should have been moved to the district court, but that it should have been treated as an R&R. Okay. They did not make the argument that that was the reason why that should have been done. And if that's all they're arguing, where would the waiver have been? When was the waiver of that? Well, the waiver of that, I believe, was when they specifically initially said they wanted the court to conduct the hearing, and when they specifically said they wanted the trial court to try it, and they never at any time suggested that this was something that was not... Strike that. I think they did suggest that they thought it was core. I actually think that for the reason we stated, that this is not a personal injury tort. It does not qualify. Well, that doesn't matter, because it's an Article III question. Whether it's a personal injury tort for purposes of statute, it still could be, and probably is, a common law tort with enough history that it's, for Article III purposes, not a core. I don't believe that's correct, Your Honor. Well, it doesn't have to be a personal injury. It doesn't have to fit within the statutory definition of personal injury for that purpose. Is that much correct? But this is a claim. This is the decision of a claim, and to the extent that it's a decision of a claim, that is a core matter. And it's only not a core. So the classic allowance of a claim is... My understanding is that Stern and Wellness basically go beyond the statute and say that even if it is core within the statute, it still may be beyond the scope of an Article I court's authority. I believe that the district court, in fact, did give a searching review of this case, and that its decision, in fact, indicates that it did. So regardless of whether or not it specifically believed itself was required to review a de novo, I think it, in fact, did review the record below very carefully and cited specific evidence below. I understand the practice of, you know, using declarations and objecting the declarant to cross-examination. I understand why district judges do it and why apparently it's a well-grounded practice in the bankruptcy court. Nonetheless, I don't know how you judge credibility just on declarations. I think it's on the things that, if you find that people exaggerate it. I don't understand that. One thing that he mentioned was that she never mentioned it. Really, as a trier fact, and I did it for many, many years in the state court and in the district court, you need to see the people. You need to hear them. You need to hear what they say, how they say it, why they say it. Well, when they never mention that they have a disability and they've been held disabled at the same time they're claiming in their declarations they would have continued to run the business until they're 62, and the evidence to the contrary was brought out in their deposition, but not in their declaration that they submitted. I do believe that based on the declarations they submit and how it's contradicted by other evidence that comes in in deposition testimony and is before the court, that you can find if somebody is not credible. But this is just the bankruptcy court. Well, suppose she was cross-examined and she said, well, if he died, I would hire somebody to run the business, because I do have this disability problem, but that doesn't mean I would give it up. Then you'd have to deduct from that the cost that you would have to pay somebody to run the business as well as she supposedly was. They were assuming that the business would continue to be run with the unique abilities, purportedly, of Mr. Moajiri. So, those are all speculative at this point, whether you could do that, what it would cost, and that's evidence that should have come in and did not come in at the trial. Okay. Does the court have any other questions? Thank you. Thank you. No questions. So far, the Moajiris have been treated unfairly. Art Peck has been treated unfairly. No one has looked at the facts in actual law. Did you ever ask the district court to make de novo findings because, excuse me, on the ground that the Article III, that the reference was not valid for the purpose of, for that single purpose? Yes. Because your motion to withdraw was about something else. The motion to withdraw also included the Article III issue. Yes, but did it include the notion that if there were findings in the bankruptcy court, they should make de novo? That was one of the reasons. We said to the court, you're going to be de novoing this anyway. You did say that. We said it. No, I remember that you said it. And you're going to be de novoing it anyway. And the court said, no, you waived it. But what's the it that you waived? You waived de novo review. In other words, you waived de novo review, and you will see in our opening brief, we basically say, so far the court has ruled that this isn't an Article III case, not a de novo review. The court should revisit, and we go on. There is not an issue that the court has talked about here that hasn't been extensively briefed by us. It was interesting that the district court said, well, you filed a 20 or 30 thing statement of issues in the bankruptcy court, but I had to go searching for it. The problem was when the court looks at all those, these are all errors of law. The cases don't stand for the propositions that they say they stand. They cite inconsistent law. They go to Florida on lost profits. And the reality, so here, think about the common sense of this. Basically, here's what we have. We have a business that has been built from the ground up. In the district court, we summarize the evidence of how the business had grown year after year after year after year, the expansion that had happened. All I can ask the court, please, is this is an evidence-driven case where the evidence has never been reviewed. When they say that we need medical testimony and the bankruptcy judge says, well, I'm not bringing in Dr. Melman because he didn't interview the witness and I'm not going to believe him anyway. Or how about the idea where she said, big pot of money. One final thing, please. If the court reverses, could you send us back to state court? Okay. Thank you. Thank you. Thank you. All right. The matter is submitted. We thank counsel for their arguments. And that ends our session for today.
judges: Pregerson, Paez, Berzon